Good morning. My name is Bill Fuller. I represent Rain and Hail in this matter. This case arises from a federal district court's review of an arbitration decision or arbitration award, I guess is the terminology, in which the arbitrator concluded that no benefits, no money was owing to the claimant, Balvin, and the federal district court basically confirmed the factual findings of the arbitrator. But the federal district court vacated the award on the basis that the arbitrator interpreted policies and procedures of the Federal Crop Insurance Corporation. And that was the reasoning that he stated in his opinion for the vacation. The claim, the basic claim that Mr. Balvin made is that he was unable to harvest his crop due to moisture. That was the basic claim. And the arbitrator concluded and ruled that he had an opportunity to harvest his crop, and he didn't. And that Balvin abandoned his corn crop by failing the timely harvest. And in addition to that, that the crop, his crop, suffered additional damage beyond the insurance period, specifically in June of 2015, a hurricane-like storm, as Mr. Balvin described it, leveled his corn crop, and then he harvested in July, one month later. So for all of those reasons, the arbitrator concluded that no benefits were owing. And factually... Well, did the arbitrator make any reference to the federal regulations?  The LAM, I guess is what it's called. The loss adjustment manual. Yes, there is reference to it, and the federal district court made reference to it, Your Honor. Well, is it your position that there's no legitimacy to the district court's view that the arbitrator actually looked to and interpreted the meaning of those policies? Correct. There was no interpretation made by the arbitrator. But what is the language in the arbitration order that's in question, that we need to focus on to determine whether the arbitrator did or did not make reference to or interpret... He could make reference, but whether they did what they shouldn't have done by interpreting the statute or regulations. The language in Judge Pearsall's decision, the federal district court decision, is that due to the fact that there were no production worksheets, and the arbitrator in essence accepted the appraisals without the production worksheets, that that was, according to Judge Pearsall, interpreting the regulations and the procedures of the Federal Crop Insurance Corporation. And so that was the basis for the vacation, vacating the award by Judge Pearsall. The manual requires them clearly, right? Correct. Okay. Did the arbitrator address that? I've not read the arbitrator's, I know it's here, opinion. Did the arbitrator address the loss adjustment manual? I don't recall that the arbitrator actually cited it. Judge Pearsall cited it. Judge Pearsall cited it on the basis that good farming practice was not interpreted by the arbitrator. Mr. Belbin made two arguments to vacate the award. The first argument was that the arbitrator employed or applied good farming practice. Judge Pearsall rejected that argument. Judge Pearsall concluded that was a factual determination. Judge Pearsall, as I recall, cited the loss adjustment manual in his decision, and he concluded that the arbitrator could easily, and it was well within his authority, to conclude whether he could harvest or not harvest without making any interpretation of a policy or procedure of the Federal Crop Insurance Corporation. The second argument that Mr. Belbin made, which was accepted by Judge Pearsall, was the fact that there were no production worksheets attached to the appraisal, and because there were no production worksheets and they were not signed, Judge Pearsall concluded that that was an interpretation. That argument wasn't made to the arbitrator, though, was it? It was made for the first time when Mr. Belbin filed his reply brief in federal district court. It was not made in front of the arbitrator. So it seems almost impossible that the arbitrator would have been interpreting something on that question, which was never raised to him. Correct. But in all fairness, Your Honor, Mr. Belbin was arguing or attacking the validity of the appraisals, and that was one of the reasons he was attacking it. But that was a factual issue. It was simply a factual issue, and you'll note... He argued to the arbitrator that the appraisals weren't accurate or weren't correct, right? Exactly. He argued that the appraisals were questionable, that the crop adjusters fudged the numbers. That, in essence, was his argument, and you'll note in the arbitration decision right at the very end that the arbitrator stated that that was not the case, that that was unconvincing, and that there was no motive on the part of the crop adjusters to do that. And so the point I'm making, Your Honor, is that that was a factual issue. That was a credibility issue. The arbitrator, like a jury, listened to the testimony of Mr. Belbin, listened to the testimony of the crop adjusters, considered all of the evidence, and decided whether Mr. Belbin's claim that the appraisals were valid or invalid, decided that Mr. Belbin's claim was without merit. He made a credibility decision, a factual determination. It wasn't a policy interpretation. And so for that reason, that's where Judge Pearsall went awry. It was not a policy interpretation. It was a factual issue, and the arbitrator heard all the testimony, saw all the witnesses testify, saw how they testified, saw their demeanor, and could determine whether their testimony made sense in view of all the other evidence, or it didn't make sense. And the arbitrator concluded, factually, that Mr. Belbin's claim that the appraisals were fudged was not believable, was not credible. And so that's the essence of why we're here today, is that Judge Pearsall concluded that that was an interpretation, and that clearly was not an interpretation. That was a factual determination by the arbitrator. So the point that I think needs to be made is that the standard of review in an arbitration decision, which Judge Pearsall cited in his decision, is that the arbitrator's decision is afforded an extraordinary level of deference. And this is under the Federal Arbitration Act, and the standard of review is among the narrowest known to law. And Mr. Belbin, in his briefing before this court, said that the arbitrator, in essence, employed an independent standard of review. And I think I have to agree with him with that. The judge did do that, and it was improper. That couldn't be any further away from the deference that you are supposed to ascribe to an arbitration award. Basically, de novo. So on one hand, it's supposed to have extraordinary deference, and on the other hand, what happened is that Judge Pearsall applied an independent standard in the words of Mr. Belbin. And based on the standard of review and the factual findings, the arbitrator's decision was proper. It was well supported by the facts. He judged the credibility of the witnesses, and his decision was that no benefits were owing. Thank you. Thank you, Mr. Fuller. Mr. Ballard. May it please the court. My name is Grant Ballard, and I'm here on behalf of Terry Balvin. We ask that this court affirm the district court's decision of vacature. The first point I think needs to be made is that appraisals were not conducted on Mr. Balvin's fields. The problem here began at arbitration. There were appraisal worksheets, right? Five of 17 insured fields. We're talking about 1,000 acres, and only five fields had appraisal worksheets done on them. So we've got over 1,000 acres of corn and only five of 17 fields ever had an adjuster step foot in them. That's a big problem. The loss adjustment manual, which is incorporated in the policy as federal law, says that you have to do an appraisal on each field, all insured fields. So the problem, and I'll step back and talk about the law in a minute, but the problem here is the arbitrator got into an arbitration where the question is, what was the actual production and revenue? Did it exceed the insurance guarantee? Mr. Balvin brought his actual harvested production figures. Then rain and hail brings five incomplete appraisal worksheets. Obviously, and it's noted that at the arbitration, Mr. Balvin said, these aren't accurate. These aren't accurate estimates of production. And the most basic reason they weren't is because they're not complete, and they did not appraise all fields. What about the rest of the testimony that the arbitrator considered beside the worksheets? The arbitrator, the other leg of his decision is that Mr. Balvin abandoned his crop. I think that's a problem. I'm going to ask that this court reverse the district court because the arbitrator made a good farming practices decision when he made a finding of abandonment. It's undisputed in this case that rain and hail gave my client, Terry Balvin, an extension of time to harvest beyond the end of the insurance period. That's undisputed. To find that failure to timely harvest is an abandonment, the loss adjustment manuals are clear. There must be a finding that it would have been a good farming practice to harvest that crop. So what the arbitrator did was he found that there was an abandonment for failure to timely harvest. To do that, he had to say it would have been a good farming practice to harvest. What should have happened, pursuant to loss adjustment procedures, is that rain and hail should have made a notice. They should have sent out a letter. It's all in the handbook. Terry Balvin, we're not paying your claim because we think you should have timely harvested. And then Mr. Balvin could appeal to the Federal Crop Insurance Corporation and said, was harvest in March a good farming practice? We all know that's highly irregular. You know there was an insured cause of loss. The farmers in this area were cutting corn in March. And it is undisputed in the record that at least one neighbor, Mr. Balvin's, was harvesting in March. There was obviously an insured cause of loss. Well, what do you do with the land provision that says there's a distinction between not following a good farming practice and abandon? You're familiar with the section. And doesn't that tie in with the other section that says the FCIC will not interpret any specific factual situation, such as acts of patricipate, et cetera, et cetera, et cetera. They're factual. So if it's factual and it's about abandonment, I think it's not good farming practice. There's a difference between establishing a good farming practice and the FCIC will not interpret factual circumstances. The loss adjustment procedures clearly state that if failure to timely harvest is going to be considered as abandonment, the crop must be in a condition where harvest would be considered a good farming practice. So there has to be a determination that harvest would be a good farming practice. That's in the loss adjustment manual at section 194. Well, I was reading from 194 too, so help me. I was reading from 194A4, I think. I think it's just a distinction. I think you just said that the lamb just distinguishes the fact that, in general, good farming practice determinations are different than factual interpretations. Of abandonment. That's correct. But in the case of failure to timely harvest is just a different situation. Because here's the problem. You might ask yourself, well, why? When would harvest not be a good farming practice? Well, I'll tell you an example. A farmer can tell you one in the northern part of this country. If there is snow sticking to those broad leaves and stalks of corn. Is this in the arbitration? What you're saying now, is this in the arbitration award? That is not. I'm departing. I think you're beginning to testify here. Go ahead. I understand, Judge. Really, my primary point to the court would be that arbitration is a creature of contract. And in the most basic sense, this is just a contract case. And the Eighth Circuit and the Supreme Court have said, we've cited the cases, that parties can limit the issues that may be submitted or resolved by an arbitrator by contract. In this case, the Federal Crop Insurance Corporation has extremely limited the authority of an arbitrator. In a 2019 case, the Fourth Circuit recently recognized that the Federal Crop Insurance Contract leaves very little decision-making authority for the arbitrator. That's the Williamson Farm v. Diversified Insurance case, crop insurance case. In these kind of cases, the contract does not allow the arbitrator to engage in policy interpretation to make good farming practice decisions. At any time, in any way, the actual policy says, if there is a question of interpretation or application of a specific policy, procedure, or provision, in any way, the arbitrator or the parties must request an interpretation from the Federal Crop Insurance Corporation. If this court... Well, in fact, you can do that even after the arbitration, can't you? You can. I think that, you know, the... Wait, you haven't done that here? It was not done in this case, because the arbitration order was already issued. Well, you can do it after, can't you? I don't believe you can, Judge. I've submitted a lot of... I've submitted quite a few. 7 CFR 400.765. I think that when you submit... FAD 230. I think that there's a manager's bulletin that might speak to that issue. When you submit a request for a final agency determination, you have to tell them, you know, what is the procedure, what is the... at what point in the proceedings you're engaged in. And there's a manager's bulletin that fills in the gaps of the regulations you're citing. And the manager's bulletin effectively says that if you are not less than 90 days before an arbitration, as I recall it, it says that basically they have to stay the arbitration hearing. Well, there's a 2019 regulation that says if either party believes an award or decision was rendered by NAD, arbitrator, mediator, judge, based on a disputed provision in which there was a failure to request final agency determination, RFIC interpretation, the party may request FCIC review. Okay. That regulation says that... I would agree it says that the party may request. What I would also suggest to the court is that the policy... Let me ask it this way, because the way I understand it was argued to the arbitrator that the appraisals were inaccurate or irrelevant. To me, that is not an... Now it's argued that they weren't signed, et cetera, which was never argued to the arbitrator, and that that somehow needs interpretation by the FCIC. What am I missing here? I would point you to the appellant's brief at page 38. The appellant's conceded that Terry Baldwin contested the appraisals as incomplete because they weren't signed at the arbitration hearing and that he contested the fact that the production worksheets were not completed. Production worksheets would be the completion of the appraisal. So there's no dispute that there was a question of whether or not these appraisals at arbitration could be used to extrapolate an estimate of production across the entire farm. I would point you to the Davis v. Proag case in the 11th Circuit and Curtis Davis v. Producers Agriculture Insurance Company. So what exactly would the FCIC be asked to interpret? The FCIC needs to decide whether or not these incomplete appraisal worksheets on five fields can be used to extrapolate a production estimate across 17 insured farms in South Dakota, similar to the Curtis Davis case. In Curtis Davis, the insurance company set some deadlines for producing documents that were not found in the policy, and the question there was an arbitrator denied the claim on the basis that we didn't meet the policy deadlines provided by Proag. The FCIC said, and the court agreed in the 11th Circuit, that that's exactly the kind of issue where FCIC interpretation is needed because the arbitrator made a step that was not provided for in the policy. He interpreted the policy to allow the crop insurance company to set deadlines not contained in the policy. In this case, instead of following the procedures, what should have happened in this case is clear. There should be no dispute at the end of the insurance period that they should have appraised all the fields. Rain and hail should have appraised the fields. That's what the loss adjustment manual requires, and it wasn't done. In this case, the issue is that the arbitrator, he disregarded the fact that there are procedures for adjustment of loss, and he decided it doesn't matter. We can use these five incomplete appraisal worksheets to appraise production on 17 insured farms. That's an interpretation. Counsel, your time's getting short. There is a section 14 of the policy. It says, Baldwin must establish that the loss was caused by an insured cause. And the arbitrator said Baldwin abandoned his crop, so the loss was avoidable. So regardless of anything else in the case, doesn't that take care of everything else in the case and resolve this case? No, it does not. A causation sort of issue. Because to get to that point, he had to make a good farming practice determination, which was out of his scope of authority. So to get there, he leaps over and misses the fact that there has to be a determination that harvest would have been a good farming practice. Harvest in March, I might add. And also, the law is clear. It doesn't matter if there was one foundation of support for the award. If an FCIC interpretation is required, pursuant to the policy and federal regulations, and it is not obtained, section 20A1, 7 CFR 457.8, paragraph 20A1 says that the arbitration award must be nullified. Must be nullified. The Supreme Court ruled on that issue in FCIC v. Merrill. The Supreme Court said we have to construe this policy and these regulations strictly. No deviations. I would say that I should also point out that it's been argued that, well, it was really the arbitrator's decision what issues were arbitrable. Didn't the arbitrator say it was the claim that there was excess moisture was not verified, that that wasn't the real reason that the crop wasn't harvested? My interpretation was not that there wasn't ever an insurable cause of loss because the insurance company obviously gave the extension to harvest, which would have to be based on insurable cause of loss. Where I read the policy, Judge, is that there were additional causes of loss that may have contributed. And that brings up a really good question because if they had done the production worksheets, there would be a little form on there where they could say they could apportion insured and uninsured losses, but the appraisals were never finished. I would also point out to you that wind damage is an insured cause of loss under a lot of crop insurance policies, storms. We've got other losses, but they could have been insured losses if there was an extension. Basically, to sum it up, judges, the insurance company botched this case and they didn't do the appraisals, and now they want to rely on documents that are outside the procedure. The arbitrator should have said, hey, we've got a problem here. I think everybody knew there was a problem because if you look in the post-hearing briefs, there's these sections titled policy interpretations. You can't interpret the policy. Everybody knew that they were walking on the edge. They took a gamble that Mr. Baldwin wouldn't appeal. The fact is that we have to have an FCIC interpretation as to how you calculate production to count when there are no appraisals done on the majority of 17 insured fields and that a couple of them weren't harvested. Most of them were harvested. You've got a real ambiguity. If this court decides vacature is not required, I want to point out that basically we're bucking the precedent of the Fourth Circuit and the Eleventh Circuit that says there's ambiguity in the contract provisions, there's ambiguity in the issues involved, that vacature is appropriate. I know that my opposing counsel said that the AAA... Exactly what provision of the policy are we talking about that requires interpretation? The arbitrator cited Section 15, which talks about when appraised production is to be used. And he said in Section K of his award that we have to use these appraisals to establish appraised production. The problem is he didn't have appraised production. He didn't have appraisals. So he decided, the arbitrator departed from the contract. That's what makes vacature appropriate. He departed from the terms of the policy. And he said, well, these appraisal worksheets on 5 out of 17 fields are good enough. Well, appraised production is defined in the LAM and they're not good enough. So he departed, the arbitrator departed from the terms of the policy. And that's the Stolt case, the U.S. Supreme Court case. If the arbitrator breaks from applying the policy or the contract, then that's properly vacated. And that's the situation I believe we find ourselves in today. Really, it's not a standard of review case in my opinion. The standard of view is clear. It's a contract. If the arbitrator did something he wasn't supposed to do per the contract, it can be vacated by the district court. I would ask you to affirm on the vacature on the appraised production issue and reverse on the fact that the district court said no good farming practice issue was involved because I think to find abandonment per the LAM for failure to timely harvest, there has to be a determination of good farming practices. Does anybody have any other questions? I see none. I appreciate y'all's attention. I can tell y'all looked at the briefs. Thank you for that. Thank you, Mr. Ballard. Mr. Fuller, your rebuttal. Thank you. Thank you, Your Honor. Without even looking at the appraisals, the arbitrator noted these factual findings. He noted that there was a 28-day window for him to get his crops out, get his corn out, that no other harvest claim in the county, pre-harvest or prevent-harvest claim in the county was made. His claim was the only one in the county. And that Mr. Belbin harvested his soybeans. He got the soybeans out, and his corn was right next to his soybeans. And his neighbor was on the other side next to him, and his neighbor got his corn out. He took his corn out during the insurance period and after the insurance period in March. And there was no one other than Mr. Belbin who testified that he could not get his corn out due to moisture. Those are the facts that were presented to the arbitrator. And Mr. Ballard brought up the fact that there was an extension for him to get his crops out, and there was. Rain and hail granted an extension, and his neighbor got his corn out in March beyond the insurance period. Mr. Belbin chose not to harvest until July, and Mr. Belbin testified that in June there was a hurricane-like storm that leveled all his corn. And so his harvest was obviously low due to that storm. So however you look at it, the facts are he could have gotten his corn out, and he chose not to do it for whatever reason. And this whole issue about appraisals, there's nothing. I have not seen any regulation, any law that prevented the arbitrator from dismissing the appraisals. And basically concluding that they were inadmissible. There's no law or regulation that states that. And the arbitrator as a fact finder can put as much weight or as little weight that he wants to on those appraisals. And he found those appraisals believable or credible, and he found Mr. Belbin's claim that the appraisals were fudged or manipulated or questionable, unconvincing. What about the legitimacy of the appraisals in the sense that they may not have been conducted according to standards and unsigned? In regard to that, the arbitrator has the liberty, has the authority, to decide how much weight he wants to put on the appraisals. That doesn't disallow, that doesn't dismiss those appraisals. There's nothing that says that anywhere. And the arbitrator has the authority as a fact finder, just like a judge, to put as much or as little weight on those appraisals. And I don't think the arbitrator even had to get to the appraisals because the evidence was so overwhelming that he could have gotten his corn out, and he didn't get his corn out. He could have gotten it out during the insurance period. He could have gotten it out after the insurance period. Apparently everybody else in that county got the corn out. There were no other claims, and his neighbor got the corn out. And so I'm not even sure that the fact finder even had to get to the issue of the appraisals, but he did, and he noted that at the very end of his decision in which he said Mr. Belden's claim that the appraisals were questionable did not fly. Basically, his claim, his argument that they were questionable was without merit. Another fact find. Was the term appraised production raised before the arbitrator, and was it discussed in any way before the- I don't think I recall, Your Honor. Not to my memory. Okay. Any other questions? Otherwise, my time is up. Okay.